IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLIED BENEFIT SYSTEMS, INC., | ) ) ) |
| Plaintiff, | ) |
| v. | ) No. 15 C 1909 |
| DENNIS RAMIREZ, | ) ) ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Dennis Ramirez ("Ramirez") has moved to dismiss this breach of contract suit by his former employer, Allied Benefit Systems, Inc. ("Allied"), on the ground that the amount in controversy is less than the $75,000 statutory minimum for invoking a federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Because Ramirez has challenged Allied's factual allegations relating to the amount in controversy, Allied must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *see also Back Doctors, Ltd. v. Metro. Prop. and Casualty Ins. Co.*, 637 F.3d 827, 829-30 (7th Cir. 2011).

For the reasons stated below, I find that neither Allied's complaint nor its affidavits establish that the amount in controversy exceeds $75,000. I therefore grant Ramirez's motion to dismiss.

1

I.

Allied is a third party administrator of health and welfare plans. Allied hired Ramirez in 2003 and promoted him several times within the company's billing department. *See* Dkt. No. 23-1 at Ex. B ("Edders Declar.") at ¶ 13. Ramirez received extensive training on how to generate client reports from "thirty-five highly specialized databases" created by integrating the QicLink software suite with Microsoft Access. *Id*. at ¶¶ 6-7. Allied's director of billing estimates that she spent "hundreds of hours" training Ramirez during his tenure with the company. *Id*. at ¶ 16.

In September 2014, Allied promoted Ramirez to a supervisory position in the billing department. *Id*. at ¶ 17. In this new position, Ramirez was responsible for (1) preparing, auditing, and posting client statements; (2) generating customized client invoices and reports; (3) resolving billing-related issues; (4) posting accounts receivable; and (5) ensuring that Allied's databases remained integrated and up to date. *Id*. at ¶ 18.

Ramirez had access to "confidential information" about Allied's clients, their plan members, and how to create databases and generate client reports. *Id*. at ¶ 19. Because of Ramirez's access to this information, Allied required him to sign a Confidentiality, Non-Solicitation, Intellectual Property and Computer Security Agreement ("Agreement"). Am. Compl. at ¶

21.  Among other restrictions, the Agreement prohibited Ramirez from working for Valence Health or any of its related companies for six months after leaving Allied.  *Id*.  Valence Health is one of Allied's direct competitors and allegedly has a history of poaching Allied employees after they have been trained.  *Id*. at ¶ 23.  The Agreement also prohibited Ramirez from disclosing or using any of Allied's "confidential information"--a contractually defined term--for any reason unrelated to his employment with Allied.  *Id*. at ¶ 24.

In January 2015, Ramirez resigned from Allied and began working for Valence Health in an unspecified capacity.  *Id*. at ¶ 25, 27.  Allied notified Ramirez in writing that his employment with Valence Health violated the Agreement.  *Id*. at ¶ 28.  Ramirez did not respond.  *Id.* at ¶ 28.

In its first amended complaint, Allied contends that Ramirez's employment with Valence Health violates an express prohibition in the Agreement and will inevitably result in the disclosure and/or use of "confidential information" in further violation of the Agreement.  *Id*. at ¶¶ 32-33.

## II.

"[A] proponent of federal jurisdiction must, if material factual allegations [relating to the amount in controversy] are contested, prove those jurisdictional facts by a preponderance of the evidence."  *Meridian*, 441 F.3d at 543; *see also Enbridge*

*Pipelines (Ill.) LLC v. Moore*, 633 F.3d 602, 605 (7th Cir. 2011) (noting that a "bare denial" of jurisdictional facts is sufficient to "put the plaintiff to his proof"). Allied must support contested factual allegations relating to the amount in controversy with "admissible evidence," such as affidavits. *Meridian*, 441 F.3d at 542-43; *see also McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 845 (7th Cir. 2009) (dismissing case for lack of subject matter jurisdiction where "plaintiffs rest[ed] their entire argument concerning amount in controversy on the allegations contained in their complaint" and did not submit "competent proof").

"Although the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy...once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Id.* at 541 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

Allied argues that the stakes in this case are at least $75,000 because (1) Allied has lost the value of Ramirez's training and experience and must hire a replacement; (2) Ramirez will inevitably disclose Allied's confidential information during his employment with Valence Health; and (3) enjoining Ramirez from working at Valence Health and disclosing or using

4

any confidential information is worth at least $75,000 standing on its own.

A.

Allied's first argument about its lost investment in Ramirez and the cost of replacing him is a non-starter. Allied would have suffered the same losses and incurred the same replacement costs upon Ramirez's departure from the company even if he had complied with every term of the Agreement. *See Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *6 (N.D. Ill. Mar. 4, 2008) (Lefkow, J.) ("damages that would have resulted from [employee's] departure to work at McDonald's [rather than for a competing genome research company] cannot establish the amount in controversy against her for the claims at issue in this case").

Allied makes a related argument that Valence Health gained a competitive advantage when it hired Ramirez because he is an experienced employee who did not need extensive training. This argument is based on two assumptions with no evidentiary support in Allied's complaint or affidavits: (1) that Ramirez holds a job at Valence Health that allows him to draw on his previous work experience at Allied and obviated or reduced the need for new employee training and (2) that Valence Health has realized at least $75,000 in cost savings because of Ramirez's prior experience.

B.

Allied has not identified any "confidential information" that Ramirez has actually disclosed or used in violation of the Agreement. Instead, Allied argues that Ramirez will inevitably disclose and/or use some of the "confidential information" he learned during his employment with Allied in a way that will cause at least $75,000 in damage.

Allied relies on *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), in support of its inevitable disclosure or use argument. In that case, the Seventh Circuit affirmed the entry of a preliminary injunction against a former high-ranking PepsiCo employee, William Redmond ("Redmond"), who had accepted a position with Quaker, one of PepsiCo's competitors in the beverage market. The district court did not abuse its discretion in concluding that Redmond would inevitably disclose and use PepsiCo's trade secrets--including its marketing and distribution plans--during his employment with Quaker in a way that would allow Quaker to stay one step ahead of its competitor. *Id*. at 1271.

Neither Allied's complaint nor its evidentiary submissions establish that Ramirez and Redmond are similarly situated. PepsiCo demonstrated that Redmond had accepted a job at Quaker where his knowledge of PepsiCo's marketing and distribution plans would allow Quaker to gain a strategic advantage in the

6

beverage market.  In contrast, Allied has not established what position Ramirez currently holds at Valence Health.  Without knowing anything about Ramirez's current job at Valence Health, I cannot say that he poses a strategic threat to Allied who will inevitably disclose and/or use Allied's confidential information.

Assuming for the sake of argument that Ramirez works in Valence Health's billing department in a job similar to the one he held at Allied, I would still need more factual support before relying on the inevitable disclosure doctrine to determine the amount in controversy.  "[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose ... trade secret information[.]'"  *Id.* at 1269 (quoting *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1207 (7th Cir. 1987)).

Allied's vague references to "confidential information" that Ramirez might exploit at Valence Health also stands in stark contrast to the evidence that PepsiCo presented about Redmond's access to a veritable "playbook" about how the company intended to market and distribute its products.  *Id*. at 1270.  Ramirez's knowledge of how to use two integrated databases and generate customized client reports falls in the category of "general skills and knowledge acquired during his tenure with [Allied]" that he is "free to take with him" to another

7

employer. *AMP*, 823 F.2d at 1202 (applying Illinois common law). The only confidential information that Ramirez had access to and might conceivably exploit at Valence Health are Allied's billing rates and other "sensitive client and employee/member data." Edders Declar. at ¶ 8. Once again, however, I cannot say that Ramirez will inevitably use or disclose this information--much less that such use or disclosure will harm Allied or benefit Valence Health to the tune of $75,000 or more--without knowing anything about Ramirez's job at Valence Health.

In sum, Allied has neither alleged nor proved that Ramirez will inevitably disclose or use Allied's confidential information during his employment with Valence Health in a way that will be worth at least $75,000 to either company.

C.

The parties' dispute over subject matter jurisdiction boils down to whether the injunctive relief Allied seeks against Ramirez is worth at least $75,000, measured from the perspective of either party. *See In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir. 1997) (value of injunction may be measured from plaintiff's or defendant's standpoint for purposes of determining whether amount in controversy exceeds statutory threshold).

Allied seeks to enjoin Ramirez from (1) working at Valence Health for six months and (2) using and/or disclosing Allied's confidential information. *See* Am. Compl. at 7.

The value of enjoining Ramirez from working at Valence Health for six months is unknown because Allied has not said anything in its complaint or affidavits about his current salary at Valence Health or his ability to find employment elsewhere.[1] "[I]t is entirely speculative that [Ramirez] would be out of work long enough to deprive him of more than $75,000 of anticipated income from [Valence Health]" if I were to enjoin him from working there for six months. *Open Text, Inc. v. Ackerman*, 02 C 6092, 2002 WL 31748839, at *4 (N.D. Ill. Dec. 9, 2002) (Kennelly, J.); *see also Kohler Co. v. Albright*, No. 3:03-CV-0609 RM, 2003 WL 22697213, at *4 (N.D. Ind. Nov. 12, 2003) (dismissing breach of contract suit where former employer "only offer[ed] speculation" about income former employee would lose if court granted injunctive relief).

Allied's only remaining hope of establishing subject matter jurisdiction turns on the value--measured from either party's

---

[1] Allied has submitted evidence that Ramirez's salary at the time of his resignation was $48,000. Nicholas Declar. at ¶ 8. The value of enjoining Ramirez from working at Valence Health for six months would exceed $75,000 only if (1) his salary had more than tripled to $150,000 per year and (2) he could not find other employment while the injunction was in place. Allied has not provided support for either assumption.

perspective--of enjoining Ramirez from using and/or disclosing confidential information. Allied says that it has invested more than $500,000 developing its databases and generated more than $20 million in revenue in 2014. *See* Edders Declar. at ¶¶ 11-12. The amount of money Allied spent developing its databases is a red herring. The issue is whether Allied will incur at least $75,000 in lost revenue--or Valence Health will realize at least $75,000 in cost savings--if Ramirez discloses and/or uses the confidential information *stored* in Allied's databases to which he had access and committed to memory. The qualifier "committed to memory" is necessary because Allied has not alleged that Ramirez made a copy of any confidential information before his resignation.

A bare statement about Allied's revenues in 2014 is not enough to infer that Ramirez retained enough confidential information in his memory to cause a $75,000 drop in Allied's revenues or Valence Health's costs. After all, Allied has not even identified what job Ramirez holds at Valence Health--let alone how he could exploit Allied's confidential information in a way that causes $75,000 in lost revenues or cost savings.

III.

Ramirez's motion to dismiss is GRANTED for the reasons stated above. Allied has already filed one amended complaint

10

attempting to cure jurisdictional defects. This case now belongs in state court.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 2, 2015